EXHIBIT E

PAID
12/02/2019/  15:31:53
ERIE COUNTY CLERK
RCPT # 19203040
I 2019000129

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ERIE

RECEIVED

DEC 2 3 2019

Lynn M. Krajacic
Town Clerk
Town of Evans

IN THE MATTER OF THE APPLICATION OF

MICHAEL ARGENTIERI, PRO SE DBA "MICKEY DOGS"

-against-

NOTICE OF
PETITION
Index No. *000129/201*

MARY HOSLER, SUPERVISOR OF THE TOWN OF EVANS,
For a Judgment pursuant to Article 78
of the Civil Practice Law & Rules

To: Mary Hosler ,Supervisor of the Town of Evans
    PLEASE TAKE NOTICE upon the annexed petition of Michael
Argentieri "DBA Mickey Dogs", sworn to on the *2nd* day of
*December,*2019, petitioner will apply to this court on the *29* day of
~~December 2019~~, *January 2020* or as soon thereafter as counsel may be heard, for a
judgment granting the relief requested in the annexed Petition.
    PLEASE TAKE FURTHER NOTICE that you must serve a verified
answer, any supporting affidavits and documents, and a certified transcript
of the record of the proceeding at least five (5) days before this application
is made.
    Petitioner designates Erie County as the place of trial. The basis of
the venue is that the Town of Evans and the petitioners business are both
located in Erie County.

Michael Argentieri, pro se *Dec 2,*2019

cc: email Town Bd
Counsel for Town
Planning
Bus.                12-23-19

SUPREME COURT STATE OF NEW YORK
COUNTY OF ERIE

_____

MICHAEL ARGENTIERI, pro se DBA MICKEY DOGS
Petitioner,


-against-



MARY HOSLER, SUPERVISOR TOWN OF EVANS,
Respondent,


For a Judgment pursuant to Article 78
of the Civil Practice Law and Rules

_____

*ATT 1.*

RECEIVED

DEC 2 3 2019

Lynn M. Krajacic
Town Clerk
Town of Evans

VERIFICATION

VERIFICATION OF PETITION
STATE OF NEW YORK )
COUNTY OF ERIE SS.:)

Louis Catalano,  deposes and says, that deponent is the owner of the
building leased by the petitioner in the above captioned proceeding, that I
have read the foregoing petition and know the contents thereof, that the
same is true to deponent's own knowledge, except as to matters therein
stated upon information and belief, which matters deponent believes to be
true. Furthermore your deponent has no direct business involvement with
"Mickey Dogs" other than being the lessor.


_____
Louis Catalano

Sworn to before me this  2
day of  December  2019

_____
Notary Public

MELISSA DARNELL
Notary Public - State of New York
01DA6382291
Qualified in Erie County
My Commission Expires 6/22, 2022

PAID
12/02/2019/  15:31:53
ERIE COUNTY CLERK
RCPT # 19203040
I 2019000129

Supreme Court of the State of New York
County of Erie

RECEIVED

DEC 2 3 2019

In the matter of the Application of
MICHAEL ARGENTIERI, pro se DBA Mickey Dogs

Lynn M. Krajacic
Town Clerk
Town of Evans

PETITION

INDEX No. 000 129/2019

-against-

Mary Hosler, Supervisor of the Town of Evans,

For a Judgment pursuant to Article 78
of the Civil Practice Law and Rules

TO The Supreme Court of the State of New York
for Erie County

The petition of Michael Argentieri, complaining of the Respondent
Town of Evans, respectfully alleges:

1.  Petitioners Michael Argentieri, pro se is the owner/operator of Mickey
    Dogs Doggie Day Care & More (Louis Catalano, property owner/lessor,
    supports all statements, facts ,assertions, etc.,  made by Michael
    Argentieri (see ATT.-1), located at 6777 Erie rd.,Derby,NY,14047,SBL #
    192.20-6-1.1, under the jurisdiction of the Town of Evans.

2.  Respondent Mary Hosler Town of Evans Supervisor. As Town
    Supervisor Mary Hosler is charged with the overall supervision and
    administration of the Town of Evans.

FACTS

3.   Petitioners challenges "Local Law #7 of the year 2019 (hereinafter the Code) (Ex. A)

4.   A brief synopsis of the events leading up to the Code are as follows. In Dec of 2018, I spoke with Mary Hosler and the then Dir of Planning (Roberta) regarding opening a day care for dogs in my current location. I left that meeting with Roberta telling me that I would be able to open probably by Feb 2019'.  Come Jan 2nd.2019' , Roberta was no longer working for the Town of Evans.

5.   On Dec.27th. 2019' I paid the town's $500. filing fee and applied for rezoning to have my current location rezoned from Motor Sales to General Business. Upon my review for rezoning on or about Feb.13th., by the zoning board ,I was told for the first time, that there was no Code for dog day care. Apparently when the Town of Evans took my filing fee they were not aware of this. Mary Hosler soon there after informed me that Justin Steinbech was writing a Code. I asked to open pending the writing of the Code and despite the fact that there were 3 dog day cares & 3 groomers operating without a Code I was not allowed to open.

6.   Come April of 2019' there was still no Code. I was then told that Will Smith, the new hire as Dir. of Planning, was going to write the  Code. Soon thereafter I was informed ,one by one {it seemed that there was a new one every month} by Smith of the restrictions that were going to be put in place. On numerous occasions I spoke with Will Smith, Mary Hosler, the zoning board, the planning board & the Town Board members in attempts to reason with them regarding the numerous restrictions. All of my attempts fell on deaf ears.

7.   Finally on July 17,2019,  the Code was adopted officially by the Town of Evans  at public meeting, and for the first time I heard that Vicky Kurek was involved in writing the Code.

8.   After months of delays ,only then was I allowed on Aug 2nd to go before the zoning board to be rezoned. And only after the rezoning was approved was I allowed to go before the Planning Board for my

Special Use Permit. Then I was in front of the Town Board on Sept.18, 2019, and was then officially under the jurisdiction of the Code. It took me over 9 months to be able to open my business.

ARGUMENT

9.  The Code as written is vague and subject to interpretation. It is a poorly drafted document that is Arbitrary & Capricious, Discriminatory, an Abuse of Discretion and in violation of both State and Federal Law. The Code was written with numerous restrictions that specifically keep any dog day care operation in the Town of Evans General Business zones from being financially feasible.

10. The rules of the Code appear to apply to all dog day cares equally within the jurisdiction of the Town of Evans (see ex A,2a) ,but it does not. According to Town of Evans Director of Planning Will Smith the rules of the Code do not apply to all dog day care operations only the dog day care operations in General Business (hereinafter GB).

11. The Town of Evans interpretation of the Code does not apply to "Golden Paws Pet Services" in Derby, "Creature Comforts Pet Resorts" in Angola and "Jamco [pet sitting & boarding]"in Angola, thereby allowing the aforementioned businesses to maintain a monopolization of the relevant pet services market within the Town of Evans Jurisdiction. A clear violation of the Sherman Act 15 USC sections 1-38.

12.  The Code was created in part by and under the influence of Town of Evans Agricultural Board member Vicky Kurek. Vicky Kurek is a very vocal opponent to the creation of the Code and the competition that it can bring to "her business", as Vicky Kurek is also the owner of Golden Paws Pet Services in Derby NY, a clear Conflict of Interest. Also Jamco acts as an agent/employee of the Town of Evans as they "Board" stray dogs for the Town of Evans Dog Control.

13. Vicky Kurek sits on the Town of Evans Agricultural Board along side of Town of Evans Dir of Planning Will Smith [alleged author of the Code], Town of Evans Counsel man Mike Schraft [who voted to approve & pass the Code], and Town of Evans Code Enforcement Director Janeen

Hill [who will enforce the Code].  Vicky Kurek's role and influence with the Town of Evans administration juxtaposed by her assisting with the writing of this Code is a  blatant conflict of interest.

14. Furthermore, on July 17,2019,  Vicky Kurek's  "Golden Paws", along with "Creature Comforts Pet Resort" Angola , NY and "Jamco K-9 Training Center" (pet boarding & pet sitting) of Angola, NY, sent Joshua Blust, the owner of "Happy Paws"  of Derby and his employees in to the Town of Evans Public Hearing  to verbally oppose allowing any dog day care from being allowed to open in the GB zone, as it is "unfair to their Businesses [Golden Paws,Creature Comforts & Jamco]".

15. On July 17,2019, at the Town of Evans public hearing on the Code, Town Counsel woman Jeane Macko announced and read into the record that Vicky Kurek of Golden Paws had sent her an e mail requesting that she read into the record Vicky Kurek's opposition to allowing dog day care in GB.

16. The restrictions of the Code make it financially unfeasible to operate a day care for dogs business in the GB District of the Town of Evans.

17. Specifically the Code (ex A 3c) calls for the requirement of 100 square feet of space per dog in the building. First of all no other Town Code in the county has this requirement and upon information and belief no other Town Code in the state has it either. Secondly the Code does not differentiate a 5 pound "teacup" dog from a 180 pound Great Dane. Apparently according to Will Smith & the Town of Evans they believe they both need the same amount of space.

18. While the SPCA does "recommend"  for optimal conditions 75-100 square feet per dog, its just that a recommendation not a requirement. Town of Evans Director of Planning Will Smith say's this restriction is for the "welfare of the dogs"  but then he also say's this restriction does not apply to  Golden Paws, Creature Comforts or Jamco.

19. I know Golden Paws uses, upon information and belief, a building of about 500 square feet to keep up to 35 dogs in for dog day care ,but Will Smith say's the Code does not apply to them. Jamco, upon information and belief has what looks like a 300-400 sq. ft. room used

to house as many dogs for day care as possible. Yet Will Smith claims the Code does not apply to Jamco. Also, I walked into Jamco in June or July this year and as soon as I opened the door I was slapped in the face by the stench of feces and urine, yet Will Smith claims to be looking out for the "welfare of the dogs".

20. My Special Use Permit restricts me to "11" dogs based upon my 1100 square foot building. In reality I can legitimately handle "up to 17" dogs depending on the size of the dogs". As a side note for perspective, National Chain "Pet Smart" in Orchard Park has a "400" square foot room and they allow "up to 17" dogs into that room for dog day care "depending on the sizes of the dogs". See (ex B) for a pic of Pet Smarts 400 sq. ft. room with "11" dogs in it, plenty of space. For the aforementioned reason this rule is Arbitrary & Capricious, Discriminatory and an Abuse of Discretion and in furtherance of the monopolization of the relevant market by the status quo.

21. The Code (3a) does not permit overnight boarding of dogs. Overnight boarding of dogs is a very important financial component of the dog day care business. Anyone with any sort of business acumen, especially someone in the business like Vicky Kurek knows how important it is to be able to offer dog boarding. Its irrational to think that consumers will leave an establishment that does day care & boarding for an establishment that can only do day care. I constantly get calls from potential clients asking if I can Board their dog along with the day care. Upon Information, belief and my research the majority of all dog day cares in Erie County General Business zones also offer Boarding.

22. Since the Code allows me to have 11 dogs from 6am til 11pm (17 hours), there is absolutely no legitimate purpose or reason to not allow me to keep up to 3 dogs, inside & supervised, in my building for the remaining 7 hours [when they are sleeping]. I asked the Town Board to allow me one (1) dog overnight and they denied me. Also according to Will Smith Town of Evans Director of Planning this rule does not apply to Golden Paws, Creature Comforts or Jamco. Rendering this rule as Arbitrary & Capricious, Discriminatory and an Abuse of Discretion and

in furtherance of the monopolization of the relevant market by the status quo.

23. To be legitimately competitive in any business, especially in this day and age, a dog day care needs to be able to offer as many services as possible to be competitive. To the point both Tops and BJ's are now also selling gas. But Vicky Kurek does not want any competition.

24. The Code (3b) does not permit my dogs to be outside for more than 10 minutes. As such I cannot offer my clients fresh air for their dogs like my competitors.  My original plan was to offer a huge yard for dogs to play in but because of the Code (3b) that's no longer an option. Dogs in general want to be outside and as a dog owner myself I would not take my dog to a dog day care where my dog could only go outside for 10 minutes.

25. Furthermore, on July 17,2019, Town of Evans Counsel Woman Jeane Macko stated on the record at the Public Hearing that she would not take her dog to a place where dogs could only be outside for 10 minutes. Even further, there are noise /nuisance rules in place as well as fencing rules (3 e,f,h,i). So this rule has no legitimate purpose or reason. Also, according to Town of Evans Director of Planning Will Smith, this rule does not apply to Golden Paws, Creature Comforts or Jamco, making it Arbitrary & Capricious, Discriminatory and an Abuse of Discretion, and in furtherance of the monopolization of the relevant market by the status quo.

26. Rule (3e) has no specific definition of what a noise/nuisance actually is. There needs to be a specific decibel level set so it's clear as to what is actually "loud". And once again this rule does not apply to Golden Paws, Creature Comfort or Jamco. Rendering it Arbitrary & Capricious, Discriminatory and an Abuse of Discretion and in furtherance of the monopolization of the status quo.

27. Dog Day Care businesses need to be convenient and dependable for the dog owners. Having to turn away dogs because I already have 11 [chihuahua's] and still plenty of room, when a client is on his way to work or to an important meeting is irrational and does not make my business convenient & dependable.

28. Having to turn away a regular client that needs boarding is not convenient & dependable. And not being able to take dogs outside on a nice day is not acceptable to most and it is irrational.

29. One restriction can be worked around but the totality of the restrictions in this matter are fatal. It is nearly impossible to build a clientele when potential clients, are aware that my business "Mickey Dogs" has numerous restrictions and that the status quo do (Golden Paws, Creature Comforts and Jamco) do not.

30. Will Smith claims that Amherst Dog Day Care Code is some sort of a "model code" so he claims he copied it. But that's not completely true. Smith copied it because it was the only local town that he could find that did not allow boarding. Smith has also falsely claimed that Amherst does not allow Dog day care in GB but they do, only it's listed for some reason under MS (ex.C) . Also the Amherst code has no square footage restrictions but Smith did not copy that off of the alleged "model code".

31. Furthermore, There is no rational basis for the Town of Evans to follow the Town of Amherst Code. The Town of Amherst has a population of over 126,000 people compared to the Town of Evans population of just over 16,000 . Neighboring towns of Hamburg, Orchard Park and West Seneca are also all much larger but are much more comparable. They all allow dog day care in GB, they all allow Boarding in GB and none of them have square footage restrictions.

32. Will Smith acting on behalf of the Town of Evans created an Arbitrary & Capricious Code, that is an abuse of discretion, and is in contravention of both state and federal law and Discriminates against any dog day care operating in GB, and that without a doubt would not allow any dog day care in GB to be financially feasible. This Code was written for the sole benefit of deterring any competition to the current status quo.

33. Finally it should be noted that my business is a minority owned business and Golden Paws, Creature Comforts & Jamco are not. Also there are no minorities on the Town Board ,Planning Board, the Zoning

Board and The Town of Evans Agricultural Board, upon information and belief.

34. No previous application has been made for the requested relief.

WHEREFORE, petitioner respectfully requests that judgment be entered pursuant to Article 78 of the Civil Practice Law and Rules.

1. VACATING and setting aside Respondents determination of July 17,2019 to enact Local Law #7 of the year 2019, as the law is Arbitrary & Capricious, Discriminatory and an Abuse of Discretion by the Town of Evans, rendering it as null and void. Vacating and setting aside the determination of August 18,2019 to assign Local Law #7 of the year 2019, to be binding on your petitioner as it is Arbitrary & Capricious, Discriminatory, an Abuse of Discretion and in furtherance of a monopolization of the status quo by the Town of Evans. Making the underlying null & void.

2. DIRECTING Respondent, as it is evident they can't or won't make the appropriate changes to properly allow for competition  eliminate (3c) the square footage requirement or in the alternative to count any dog under 30 pounds as a half a dog; to eliminate the"no boarding" rule (3a); to eliminate the "10 minute" rule (3b) to allow for dogs to play outside as long as petitioner is in compliance with noise and fence rules (3 e,f,h,i); and to add a specific noise level such as it must be less than 35 dBA at the property line, to rule (3e).

3. ENJOINING Respondent from "Closing Down" petitioner even temporarily for lack of an appropriate Code or any reason that can be considered retaliatory in nature.

4. GRANTING such other and further relief as the Court may deem just and proper.

Michael Argentieri, pro-se

_December_ ,2019

# Proposed Local Law #7 of the year 2019

### Add new subsection to §200-21B(1): Permitted Uses

1) Definition:

   a) DOG DAY CARE FACILITY – A commercial facility for the supervised care and socialization of dogs, not to include facilities that provide overnight boarding, breeding or selling of dogs, or facilities whose primary source of revenue is licensed veterinarian services.

2) Permitted Uses:

   a) Dog Day Care Facilities shall only be permitted in Agriculture & Open Space, Rural Agriculture, General Business Districts.

      i) All Dog Day Care Facilities shall require the issuance of a special use permit approval pursuant to §200-45 from the Evans Town Board. The Town Board shall refer all special use permit applications to the Planning Board and Code Enforcement Office for review and recommendations prior to the issuance of site plan approval and the special use permit.

3) Design Criteria:

   a) Dogs may be groomed, trained, exercised and socialized, but not boarded overnight, bred or sold.

   b) All activities related to the dog day care facility shall be undertaken indoors with the exception of short-term outdoor periods for the dogs to relieve themselves.

   c) Indoor areas designed for dog supervision, training, exercising, socializing, grooming and resting (not to include office, retail, reception, bathrooms) must consist of a minimum 100 sq ft per dog.

   d) Dog Day Care Facilities may include an accessory use for the retail sale of products related to the operation of the facility.

   e) Dog Day Care Facilities shall be soundproofed to the best of the owner's ability to prevent a noise nuisance to surrounding properties. Any and all noise complaints will be reviewed by the Code Enforcement Officer to determine if additional action is required.

   f) The operation of the facility shall not allow the creation of noise by any animal or animals under its care which can be heard by any person at or beyond the property line of the lot on which the facility is located repeatedly over a ten-minute period.

   g) The hours of operation of a Dog Day Care Facility shall begin no earlier than 6:00 AM and shall end no later than 11:00 PM with no dogs allowed outdoors prior to 7:00 AM or after 10:00 PM.

h) Outdoor areas shall be located in either the rear or side yards and a minimum of 100 feet from the nearest residential property line.

i) Outdoor areas shall be screened by solid wood, vinyl or masonry fencing or other visual barrier that is six (6) feet high and not to extend into the front yard or past the front line of the building.

j) All animal waste must be placed in closed waste disposal containers and collected and disposed of by a qualified waste disposal company at least weekly. Waste receptacles are to be screened appropriately with fencing and/or landscaping from neighboring properties.

k) The operator of the facility will be required to maintain all required licenses and permits.

## Associated definition to include in Article III, §200-7: Definitions

DOG DAY CARE FACILITY – A commercial facility for the supervised care and socialization of dogs, not to include facilities that provide overnight boarding, breeding or selling of dogs, or facilities whose primary source of revenue is licensed veterinarian services.

Delete ANIMAL HOSPITAL OR VETERINARIAN and replace with:

ANIMAL GROOMING, ANIMAL HOSPITAL OR VETERINARIAN – An animal grooming facility, animal hospital or veterinarian is permitted in accordance with the GB district, provided that all activity associated with the operation shall take place within a completely enclosed building.





**§ 4-6. Motor Service District (MS)**

4-6-1.   **Purpose.** To provide areas within the Town for the location of transportation-oriented commercial uses designed to serve the needs of motorists and related vehicular needs.

4-6-2.   **Principal and Special Uses.**

    A.   **Permitted Uses and Structures.**

| **MS** | Permitted | Special Use | Standards |
|---|---|---|---|
| **OPEN USES** | | | |
| No open uses allowed | | | |
| **RESIDENTIAL USES** | | | |
| Upper-story dwelling unit | ✓ | | § 6-2-6 |
| **PUBLIC AND CIVIC USES** | | | |
| Ambulance service | ✓ | | |
| Minor utilities | ✓ | | |
| Place of worship | ✓ | | § 6-3-3 |
| Public utility service structure or facility | | ✓ | § 6-3-4 |
| Public works construction yard  [Added 12-7-2009 by L.L. No. 19-2009] | ✓ | | § 6-3-5 |
| Telecommunication facility | | ✓ | § 6-7 |
| **COMMERCIAL** | | | |
| Bus garages  [Added 2-24-2014 by L.L. No. 4-2014] | ✓ | | |
| Bus | | | |
| Car wash | ✓ | | § 6-4-3 |
| Dog day care facility  [Added 10-17-2011 by L.L. No. 25-2011] | ✓ | | § 6-4-13  [Amended 11-5-2012 by L.L. No. 17-2012] |
| Motor vehicle repair  [Added 2-4-2008 by L.L. No. 1-2008] | ✓ | | |
| Motor vehicle washing establishment | ✓ | | |
| Passenger terminal | ✓ | | |
| Restaurant with drive-through  [Amended 9-21-2009 by L.L. No. 14-2009] | ✓ | | § 4-8-4 |
| Restaurant without drive-through or outdoor dining  [Amended 9-21-2009 by L.L. No. 14-2009] | ✓ | | |



ZONING

(2)   No outdoor speakers shall be permitted.

(3)   Wheel stops or other permanent barriers shall be installed to prevent vehicles from encroaching on required setbacks or landscaping.

(4)   Display vehicles shall be arranged in an orderly fashion and provide reasonable room for pedestrian and vehicular maneuvering.

(5)   In the MS district, such uses shall require a minimum lot area of one-half acre.

(6)   In the GB district, used car sales and car rental shall be in conjunction with new car sales only and shall be limited to less than 50 percent of total automobile inventory on the same lot as the new car sale usage.

(7)   In a GB district that abuts a residential district, car sales and service establishments must meet the following standards:

    (a)   Hours of operation are limited from 7:00 a.m. to 9:00 p.m.

    (b)   Overhead doors shall not face a residential district and doors will be closed except for entry and exit of vehicles.

    (c)   The minimum setback to paved areas shall be 25 feet.

B.   TNB Overlay District

(1)   No vehicle storage, display or parking shall be permitted between the principal structure and front lot line.

(2)   No service bay or garage doors shall face the street.

(3)   Display vehicles shall be arranged in an orderly fashion and provide reasonable room for pedestrian and vehicular maneuvering.

6-4-13. **Dog Day Care Facilities.** A facility for the day care and socialization of dogs is permitted in accordance with the district use tables in Part 4 or Part 5 subject to the following standards. [Added 10-17-2011 by L.L. No. 25-2011; amended 11-5-2012 by L.L. No. 17-2012]

A.   Dogs may be groomed, trained, exercised and socialized, but not boarded overnight, bred or sold.

B.   All activities related to the dog day care facility shall be undertaken indoors with the exception of short-term outdoor periods for the dogs to relieve themselves. Outdoor areas shall be located a minimum of 250 feet from the nearest residential district boundary and shall be screened by solid wood, vinyl or masonry fencing that is eight (8) feet high.

C.   Dog day care facilities may include as an accessory use the retail sale of products related to the operation of the facility.

D.   The operator of the facility will be required to maintain all required licenses and permits.

E.   All animal waste must be placed in closed waste disposal containers and collected and disposed of by a qualified waste disposal company at least weekly.

F.   A building for a dog day care facility shall be soundproofed to maintain a noise level that is less than 35 dBA as measured at the property line or common wall if within a multi-tenant building.

G.   The hours of operation of a dog day care facility shall begin no earlier than 6:00 AM and shall end no later than 9:00 pm.

## § 6-5. Industrial Use Standards

**6-5-1. Research and Development Uses.** Research and development uses listed in the district tables in Part 4 shall be permitted provided that no such use shall occupy more than 15 percent of the gross floor area of the occupant space within which it is located and no such use shall exceed 25,000 square feet of the gross floor area of the building.

## § 6-6. Standards for Sexually Oriented Businesses [Added 7-7-2008 by L.L. No. 9-2008]

**6-6-1. Purpose. [Amended 2-22-2019 by L.L. No. 1-2019]**

A.   Concurrently with a major revision to this Zoning Ordinance, the Town of Amherst retained Eric Damian Kelly, Ph.D., FAICP, and Connie B. Cooper, FAICP, working under Duncan Associates, to study the issues related to sexually oriented businesses in the Town and in the surrounding region. In a report entitled "Findings and Recommendations, Sexually Oriented Entertainment and Related Businesses," dated August 2005, Kelly and Cooper summarized studies from other communities, including several in New York State, documenting the negative secondary effects that sexually oriented businesses may have on property values and the negative effects that such businesses may have on the community through increases in crime around them. As part of their work, Cooper and Kelly provided to the Town copies of major studies from other communities, which have also been made available to the Town Board. Based on Kelly and Cooper's report and on these other studies, the Town Board has made specific findings regarding such secondary effects and has concluded that the regulations contained in this Article provide an appropriate and narrowly tailored approach to limiting the negative secondary effects of such businesses while allowing the types of communication protected by the First Amendment to occur in Amherst, limited only by appropriate regulations on the place and context of such communications.

B.   The Constitution and laws of the State of New York grant to the Town of Amherst powers, especially police power, to enact reasonable legislation and measures to regulate and supervise sexually oriented entertainment establishments in order to protect the public health, safety and welfare.

C.   It is not the intent of the Town of Amherst in enacting this Ordinance to deny to any person rights to speech protected by the United States and/or State Constitutions, nor is it the intent of the Town of Amherst to impose any additional limitations or restrictions on the contents of any communicative materials, including sexually oriented films, video tapes, books and/or other

203:238                          05 - 01 - 2019



$5.25

7018 2290 0001 7376 4571

CERTIFIED MAIL

7018 2290 0001 7376 4571

Mary Hosler Town Supervisor
Town of Evans
8787 Erie rd.
Angola, NY 14006