UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL ARGENTIERI,

                 Plaintiff,

        v.                                      20-CV-806-LJV
                                                DECISION & ORDER

TOWN OF EVANS, et al.,

                 Defendants.

_____

On June 26, 2020, the pro se plaintiff, Michael Argentieri, commenced this action under 42 U.S.C. § 1983 asserting claims based on the passage of Local Law No. 7 of 2019 in the Town of Evans, New York. Docket Item 1. Argentieri sued several parties involved with the enactment of Local Law No. 7: the Town of Evans itself; Town of Evans Supervisor Mary Hosler; Town of Evans Director of Planning and Development William Smith; Town of Evans Councilwoman Jeane Macko; Town of Evans Councilman Mike Schraft; and Town of Evans Agricultural Board Members Jeneen Hill and Vicky Kurek. *See id.* at ¶¶ 3-9.

On September 22, 2022, the defendants moved to dismiss the complaint, Docket Item 15; on October 12, 2022, Argentieri responded, Docket Item 19; and on October 28, 2022; the defendants replied, Docket Item 21. Argentieri later "moved" this Court for a ruling on the defendants' motion to dismiss. *See* Docket Item 23.

For the following reasons, the Court: (1) grants the defendants' motion; (2) dismisses Argentieri's complaint; and (3) denies Argentieri's motion for a ruling as moot.

## BACKGROUND[1]

In December 2018, Argentieri reached out to the Town of Evans to inquire about opening a business, "Mickey Dogs Doggie Day Care & More," on New York State Route 5 within the town.  Docket Item 1 at ¶ 15.  At the time, former Town of Evans Director of Planning and Development Roberta Rappoccio told Argentieri that he could have a business up and running by February 2019.  *Id.*

A short time later, Town of Evans Planning Clerk Debra Wilson told Argentieri that if he wanted to operate a dog day care business on Route 5, any available property would need to be rezoned from "Motor Sales" to "General Business."  *See id.* at ¶ 16. Argentieri therefore filed the necessary paperwork and paid a $500 filing fee toward that end.  *Id.*  But during a town hearing in February 2019, Argentieri learned that the existing town code had no provision for the operation of dog day care businesses on properties zoned "General Business" and that he would have to wait for the current code to be amended before his business could open.  *See id.*

In March 2019, Supervisor Hosler told Argentieri that an individual named Justin Steinbeck was drafting the new amendment, later called Local Law No. 7.  *Id.* at ¶¶ 16-17.  A month later, however, Hosler told Argentieri that the responsibility of drafting

---

[1] In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accept[s] all factual allegations as true and draw all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  The following facts are taken from the complaint, Docket Item 1, as well as the copy of Local Law No. 7 and the records from Argentieri's Article 78 proceeding that are attached to the declaration of Henry A. Zomerfeld in support of the defendants' motion to dismiss, *see generally* Docket Item 15, because those documents are either relied on by the complaint or matters of public record, *see L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

Local Law No. 7 was now with Smith, the new planning director for the Town of Evans. *Id.* at ¶ 17.  Hosler reiterated to Argentieri that Argentieri would be able to open his business in a few months.  *See id.*

On May 1, 2019, Argentieri leased available property "at 6885 Erie [Road] on [R]oute 5 in Derby."  *Id.* at ¶ 18.  Argentieri paid the first month's rent as well as a security deposit, and he began preparing to open his business.  *See id.*  In June, however, Argentieri learned that even if Local Law No. 7 was enacted, it would restrict his business in several respects.  *See id.*  More specifically, Argentieri: (1) would not be allowed to board dogs overnight; (2) would not be allowed to keep dogs outside for any extended period of time; and (3) could have only one dog for every 100 square feet of space.  *See id.* at ¶ 19.  And following a public hearing, Local Law No. 7 was enacted with those restrictions on July 17, 2019.  *See id.* at ¶¶ 19, 24, 32.

On December 2, 2019, Argentieri challenged the validity of Local Law No. 7 in New York State Supreme Court, Erie County, under Article 78 of the New York Civil Practice Law and Rules ("CPLR").  *Id.* at ¶ 12; *see* Docket Item 15-6.  New York State Supreme Court Justice Frank A. Sedita, III, dismissed that petition as untimely on May 14, 2020.  Docket Item 1 at ¶ 12; *see* Docket Item 15-10.  Argentieri did not appeal that order, but on January 31, 2022, he moved for reargument under CPLR Rule 2221.  *See* Docket Item 15-11.  New York State Supreme Court Justice Henry J. Nowak denied Argentieri's motion for reargument as untimely on June 10, 2022.  *See* Docket Item 15-14.

## LEGAL PRINCIPLES

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

In his complaint,[2] Argentieri alleges that the defendants violated his constitutional rights under the Fourteenth Amendment and the Commerce Clause.  *See* Docket Item 1 at ¶ 10.  And in response to the defendants' motion to dismiss, he claims that the defendants' enactment of Local Law No. 7 violated federal and state antitrust laws.  *See* Docket Item 19 at 2, ¶ 7.

The defendants advance several arguments why Argentieri's complaint should be dismissed in its entirety.  *See* Docket Item 15-17 at 12-31; Docket Item 21 at 4-10. The Court addresses each of those arguments as they relate to Argentieri's claims.

---

[2] The filed version of the complaint is missing page 12 which contains paragraphs 33 through 35.  *See* Docket Item 1.  The version of the complaint attached to the defendants' motion to dismiss includes that page, *see* Docket Item 15-15 at 13, but is missing page 10 which contains paragraphs 28 through 30, *see id.*  Having reviewed both Docket Item 1 and Docket Item 15-15, the Court is confident that it has reviewed the complaint in its entirety.

I.      **PRECLUSION**

The defendants first argue that Argentieri's complaint must be dismissed on res judicata grounds because the sum and substance of his federal claims were decided during his Article 78 proceeding.  *See* Docket Item 15-17 at 12-14.  This Court disagrees.

"The full faith and credit statute, 28 U.S.C. § 1738, requires federal courts to 'give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'"  *Whitfield v. City of New York*, 96 F.4th 504, 522 (2d Cir. 2024) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).  For that reason, New York law governs the preclusive effect this Court must afford the dismissal of Argentieri's Article 78 petition.  *See, e.g.*, *Corbett v. City of New York*, 816 F. App'x 551, 553 (2d Cir. 2020) (summary order).

"Under res judicata, or claim preclusion, a valid final judgment bars future actions between the same parties on the same cause of action."  *Simmons v. Trans Express, Inc.*, 170 N.E.3d 733, 37 N.Y.3d 107, 111 (2021).  "New York courts apply 'a transactional analysis approach in determining whether an earlier judgment has claim preclusive effect, such that once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'"  *Whitfield*, 96 F.4th at 523 (quoting *Simmons*, 37 N.Y.3d at 111).  The claim preclusion bar is not limitless, however, and does "not apply 'if the initial forum did not have the power to award the full measure of relief sought in the later litigation.'"  *Id.* (quoting *Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir. 1986)).

"In a pure Article 78 proceeding, the state court lacks the power to award the full measure of relief that may be sought in subsequent litigation for damages." *Id.* at 526 (internal quotation marks and citation omitted).  But in a "hybrid" Article 78 proceeding, "[t]he state court's power to award plenary relief is not limited," and "res judicata applies and precludes the petitioner from getting another bite at the apple." *Id.* (italics omitted). So "[t]o determine the res judicata effect of a state court judgment that terminates a proceeding initiated under Article 78, a later court's task is to ascertain which type of proceeding the petitioner sought and which type the state court conducted." *Id.* at 528 (italics omitted).  "[A] prior proceeding initiated under Article 78 will be deemed a hybrid proceeding only if: (1) the state court petitioner sought relief that is not available under Article 78; and (2) the state court treated the proceeding as a hybrid one." *Id.* at 526-27.

In this case, both factors suggest that Argentieri initiated a pure—not a hybrid— Article 78 proceeding.  In his petition, Argentieri primarily sought to vacate Local Law No. 7.  *See* Docket Item 15-6 at 11, ¶ 1.  Alternatively, Argentieri requested a court order directing the Town of Evans to amend Local Law No. 7 and enjoining the Town of Evans from shutting down Argentieri's business for "any reason that c[ould] be considered retaliatory in nature."  *See id.* at 11, ¶¶ 2-3.  Those forms of requested relief squarely fall within the scope of Article 78.  *See* N.Y. C.P.L.R. § 7806 ("If the proceeding [is] brought to review [an administrative] determination, the judgment may annul or confirm the determination in whole or in part, or modify it, and may direct or prohibit specified action by the respondent.").

Further, at oral argument, Justice Sedita denied Argentieri's petition from the bench, stating:

The instant petition does not seek to address a decision of the [t]own [b]oard [of the Town of Evans].   The instant petition seeks to challenge the enactment of Local Law N[o.] 7.   Specifically, the petition argues the substance of the law and its validity and fairness. . . .

The rule is that a CPLR Article 78 proceeding ordinarily does not lie to challenge a legislative act.   Additionally, a CPLR Article 78 proceeding does not lie to challenge the constitutionality of the statue.   In other words, a CPLR [Article] 78 proceeding is appropriate when there is a challenge directed toward the procedures and the enactment of the local law, but [it] is not appropriate when the challenge is directed toward the substance of that law.   That would be more appropriate for a declaratory judgment action. . . .

Therefore, an Article 78 proceeding, especially standing alone, is an inappropriate mechanism to challenge the local law in question.

*See* Docket Item 19 at 27-29.   That language indicates that Justice Sedita understood Argentieri's petition as initiating a pure Article 78 proceeding as well.   *See, e.g.*, *Whitfield*, 96 F.4th at 530 ("[I]t appears from the decretal language, where the court denied the 'petition' and dismissed 'the proceeding,' not the 'hybrid proceeding' or 'action,' that the court itself understood that it was only addressing the Article 78 claims." (internal citations omitted)).   For those reasons, the doctrine of res judicata does not preclude Argentieri's claims in this Court.

## II.    SECTION 1983 CLAIMS

The defendants also argue that Argentieri fails to state a claim under 42 U.S.C. § 1983.   *See* Docket Item 15-17 at 19-31.   Argentieri alleges that the individual defendants deprived him of his constitutional rights under the Fourteenth Amendment and the Commerce Clause.   *See* Docket Item 1 at ¶ 10.   More specifically, he alleges that the individual defendants deprived him of those rights through an illegal conspiracy, as well as through an official policy or custom of the Town of Evans.   *See id.* at ¶¶ 25-28, 48.

"Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985)). "To state a valid claim under [section] 1983, the plaintiff must allege that the challenged conduct (1) was attributable a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997).

Here, Argentieri does not articulate specific claims under either the Fourteenth Amendment or the Commerce Clause. *See* Docket Item 1 at ¶ 10. In light of Argentieri's pro se status, however, the Court broadly construes his complaint to allege procedural due process, substantive due process, and equal protection claims under the Fourteenth Amendment, as well as a dormant Commerce Clause claim. *See Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) ("[C]ourts must construe pro se pleadings broadly[] and interpret them to raise the strongest arguments that they suggest." (italics, internal quotation marks, and citation omitted)). But even so, the Court agrees with the defendants that Argentieri does not plausibly allege a deprivation of his rights under any of those constitutional provisions.

### A.    Procedural Due Process

The Due Process Clause of the Fourteenth Amendment "prohibits states from 'depriv[ing] any person of life, liberty, or property, without due process of law.'" *Matzell v. Annucci*, 64 F.4th 425, 436 (2d Cir. 2023) (alteration in original) (quoting U.S. Const. amend. XIV, § 1). But "due process protections are not required when the government takes action that is legislative rather than adjudicative." *Edelhertz v. City of Middletown*,

943 F. Supp. 2d 388, 394-95 (S.D.N.Y. 2012), *aff'd*, 714 F.3d 749 (2d Cir. 2013); *see*

*Interport Pilots Agency, Inc. v. Sammis*, 14 F.3d 133, 142 (2d Cir. 1994) ("Official action

that is legislative in nature is not subject to the notice and hearing requirements of the

due process clause [of the Fourteenth Amendment].").  Indeed, "[t]he Supreme Court

has not recognized a constitutional right to participate directly in legislative action

because of the 'massive intrusion into state and federal policymaking' that would result."

*Edelhertz,* 943 F. Supp. 2d at 395 (quoting *Minn. State Bd. for Cmty. Colls. v. Knight*,

465 U.S. 271, 284-85 (1984)).

        "The [Second Circuit's] test for determining whether official action is adjudicative

or legislative focuses on the function performed by the decisionmaker, not on the

method of selecting the decisionmaker or on the form in which the decision is

announced."  *RR Vill. Ass'n, Inc. v. Denver Sewer Corp.*, 826 F.2d 1197, 1204-05 (2d

Cir. 1987) (internal citations omitted).  "Official action is adjudicative when it is 'designed

to adjudicate disputed facts in particular cases.'"  *O'Bradovich v. Village of Tuckahoe*,

325 F. Supp. 2d 413, 429 (S.D.N.Y. 2004) (quoting *United States v. Fla. E. Coast Ry.*

*Co.*, 410 U.S. 224, 245 (1973)).  On the other hand, official action "is legislative when it

has 'general application and look[s] to the future.'"  *Id.* (quoting *Interport Pilots Agency,*

*Inc.*, 14 F.3d at 142).  Stated differently, "[a]djudicative decisions apply a statute or legal

standard 'to a given fact situation involving particular individuals,' whereas legislative

action entails 'the formulation of a general rule to be applied at a subsequent time.'"

*Edelhertz*, 943 F. Supp. 2d at 395 (alteration omitted) (quoting *Air Line Pilots Ass'n. Int'l*

*v. Quesada*, 276 F.2d 892, 896 (2d Cir. 1960)).

In this case, the official action at issue—Local Law No. 7—is clearly legislative, not adjudicative.  It establishes a "Dog Day Care Facility" as a type of business recognized by the Town of Evans and sets forth operating restrictions for those businesses.  *See* Docket Item 15-5 at 2-4.  It provides that dog day care facilities (1) "shall only be permitted in Agriculture & Open Space, Rural Agriculture, [and] General Business Districts" and (2) "shall require the issuance of a special use permit . . . by the Evans Town Board."  *See id.*  In other words, Local Law No. 7 makes rules that apply generally in the future and is thus a legislative act.  *See, e.g.*, *Edelhertz*, 943 F. Supp. 2d at 396 ("As the Amortization Law applies across the board to all non-owner occupied multiple dwellings in the affected zoning districts, and does not seek to impose any retroactive penalty, but rather is forward looking, it cannot be considered an adjudicative decision by the Common Council.").

Therefore, and because "due process protections are not required when the government takes action that is legislative," *see id.* at 394-95, Argentieri has failed to state a viable procedural due process claim.

## B.    Substantive Due Process

"In addition to guaranteeing fair process, the Fourteenth Amendment covers a substantive sphere barring certain government actions regardless of the fairness of the procedures used to implement them."  *Matzell*, 64 F.4th at 436 (alterations, internal quotation marks, and internal citations omitted).  "To succeed on a substantive due process claim[,] a plaintiff must (1) identify the constitutional right at stake and (2) demonstrate that the state action was so egregious, so outrageous, that it may fairly be

said to shock the contemporary conscience." *Id.* (internal quotation marks and citation omitted).

Argentieri does not explicitly identify any liberty or property interest at stake, but the Court understands his complaint to allege a deprivation of either: (1) the right to use the leased property on Route 5 without the operating restrictions imposed by Local Law No. 7 or (2) the right to earn a livelihood.  But even broadly construed, Argentieri's complaint fails to allege a deprivation of either.

### 1.    Property Use

The Second Circuit "uses a strict entitlement test to determine whether a party's interest in [a particular] land-use [benefit] is protectable under the Fourteenth Amendment."  *Zahra v. Town of Southold*, 48 F.3d 674, 680 (2d Cir. 1995) (internal quotation marks and citations omitted).  "Th[at] inquiry stems from the view that a property interest can sometimes exist in what is *sought*—in addition to the property interest that exists in what is *owned*—provided there is a legitimate claim of entitlement to the benefit in question."  *Id.* (emphases in original) (internal quotation marks and citations omitted).  But "a property right will not be recognized as cognizable under the due process doctrine if the person claiming the right has a mere abstract need or desire for, or unilateral expectation of the claimed right[;] [r]ather, the person claiming the right must have a 'legitimate claim of entitlement' to it."  *DLC Mgmt. Corp. v Town of Hyde Park*, 163 F.3d 124, 130 (2d Cir. 1998) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

"In applying the [strict] entitlement test, [courts] look to existing rules or understandings that stem from an independent source such as state law to determine

whether a claimed property right rises to the level of a right entitled to protection under the [ ] due process doctrine." *Id.* (internal quotation marks and citation omitted). Accordingly, this Court must look to New York law to determine whether Argentieri had a legitimate claim of entitlement to use the leased property on Route 5 without the operating restrictions imposed by Local Law No. 7. *See, e.g.*, *Brady v. Town of Colchester*, 863 F.2d 205, 212 (2d Cir. 1988).

"Under New York law, a property owner has no right to an existing land-use benefit unless that right has 'vested.'" *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 784 (2d Cir. 2007); *see Ellington Constr. Corp. v. Zoning Bd. of Appeals of Inc. Vill. of New Hempstead*, 566 N.E.2d 128, 77 N.Y.2d 114, 122 (1990). "For a right in a particular [land-use benefit] to vest, a property owner must have undertaken substantial construction and must have made substantial expenditures prior to the enactment of the more restrictive [ ] ordinance." *DLC Mgmt. Corp.*, 163 F.3d at 130; *see Town of Orangetown v. Magee*, 665 N.E.2d 1061, 88 N.Y.2d 41, 47-48 (1996). Therefore, "to gain the vested right, 'the landowner's actions relying on a valid permit must be so substantial that the municipal action results in serious loss rendering the improvements essentially valueless.'" *Cine SK8, Inc.*, 507 F.3d at 784 (alteration omitted) (quoting *Town of Orangetown*, 88 N.Y.2d at 47-48).

In this case, two obstacles prevent Argentieri from plausibly alleging that Local Law No. 7 deprived him of a vested right to a particular land-use benefit. First, Argentieri did not and does not own the property along Route 5 on which he operates his business. *See* Docket Item 1 at ¶ 18. And under the case law, ownership is required for a particular land-use benefit to vest. *See Town of Orangetown*, 88 N.Y.2d

at 47-48; *Ellington Constr. Corp.*, 77 N.Y.2d at 122; *see also 689 Eatery Corp. v. City of New York*, Case Nos. 02-cv-4431 (LJL), 02-cv-4432 (LJL), 02-cv-8333 (LJL), 18-cv-3732 (LJL), 2024 WL 519967, at *70 (S.D.N.Y. Feb. 9, 2024) ("While there exists a property right in land ownership, there is no [ ] due process right against enforcement of a zoning law." (citing *RRI Realty Corp. v. Village of Southampton*, 870 F.2d 911, 915-16 (2d Cir. 1989))).

Second, even if Argentieri had a vested right to a particular land-use benefit, that right would not and could not have vested until after Local Law No. 7 was passed.  Prior to that law's enactment, neither Argentieri nor anyone else could operate a dog day care facility or a commercial kennel[3] on property zoned "General Business."  *See* Docket Item 1 at ¶ 16; Docket Item 15-5 at 2-4; *see also* Town of Evans, N.Y., Code § 200-8.1(B)(2)(q) (providing for the operation of a commercial kennel on properties zoned "Agriculture & Open Space"); *id.* § 200-8.2(B)(2)(n) (same for properties zoned "Rural Agriculture").  So even if Argentieri "began cleaning, painting[,] and ordering supplies" in anticipation of Local Law No. 7, *see* Docket Item 1 at ¶ 18, he made those improvements before he had any right to use the property the way he wanted to, not "prior to the enactment of [a] more restrictive [ ] ordinance," *see DLC Mgmt. Corp.*, 163 F.3d at 130, or "pursuant to a legally issued permit," *see Cine SK8, Inc.*, 507 F.3d at 785.

For those reasons, Argentieri does not allege that he had a vested right to a particular land-use benefit before the adoption of Local Law No. 7.  *See, e.g.*, *Cunney v.*

---

[3] A "Commercial Kennel" is an "establishment in which dogs, cats, or other domesticated animals are housed, groomed, bred, boarded, trained, or sold for a fee or other compensation."  Town of Evans, N.Y., Code § 200-7.

*Village of Grand View*, 56 F. Supp. 3d 470, 504 (S.D.N.Y. 2014) ("[A]n individual may acquire a vested right in an *existing* benefit after undertaking expenditures in reliance on *maintaining* that benefit." (emphases in original) (also collecting cases)).  Argentieri therefore has failed to state a viable substantive due process claim based on a legitimate claim of entitlement to use the leased property on Route 5 without the operating restrictions imposed by Local Law No. 7.

### 2.    Livelihood

The Supreme Court "has indicated that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field or private employment."  *Conn v. Gabbert*, 526 U.S. 286, 291-92 (1999).  "That right, however, is 'subject to reasonable government regulation.'"  *Hu v. City of New York*, 927 F.3d 81, 102 (2d Cir. 2019) (quoting *Conn*, 526 U.S. at 292); *see Nebbia v. New York*, 291 U.S. 502, 512 (1934) ("The Constitution does not guarantee the unrestricted privilege to engage in a business or to conduct it as one pleases[;] . . . the right to conduct a business, or to pursue a calling, may be conditioned.").  "To prevail on such a claim, a plaintiff must allege facts suggesting that a defendant's conduct has operated as a complete prohibition on his ability to practice his chosen profession."  *Hu*, 927 F.3d at 102-03 (alterations, internal quotation marks, and citation omitted).  "[B]usiness losses alone do not implicate the [d]ue [p]rocess right of occupational choice."  *Id.* at 103.

Argentieri asserts that Local Law No. 7 "substantially lessen[ed] current and future competition in the dog day care [and] boarding business[] within the Town of Evans."  *See* Docket Item 1 at ¶ 26.  But that assertion falls well short of alleging a

deprivation of his right to earn a livelihood.  *See, e.g.*, *Everest Foods Inc. v. Cuomo*, 585
F. Supp. 3d 425, 439 (S.D.N.Y. 2022) ("The [c]omplaint concedes that the [executive
orders] restricted only indoor dining and allowed restaurants to offer delivery and take-
out services[;] [t]hat [the plaintiffs] chose not to offer such services, even when their
failure to do so forced them to shut down operations altogether, does not alter the
analysis.").  For that reason, Argentieri has not raised a viable substantive due process
claim based on a deprivation of his right to earn a livelihood.

### C.    Equal Protection

"The Equal Protection Clause prohibits states 'from deny[ing] to any person
within [their] jurisdiction the equal protection of the laws.'"  *Chinese Am. Citizens
Alliance of Greater N.Y. v. Adams*, Case No. 22-2649, 2024 WL 4270578, at *6 (2d Cir.
Sept. 24, 2024) (quoting U.S. Const. amend. XIV, § 1).  "The Clause's 'central purpose
is to prevent the States from purposefully discriminating between individuals on the
basis of race.'"  *Id.* (quoting *Shaw v. Reno*, 509 U.S. 630, 642 (1993)).

"Applying Supreme Court precedent, [the Second Circuit] ha[s] generally
recognized three types of discriminatory laws: (1) a facially discriminatory law or policy
that expressly classifies individuals on the basis of race; (2) a facially neutral law that is
enforced in a discriminatory fashion; and (3) a facially neutral law that was adopted with
discriminatory intent and resulted in a discriminatory effect."  *Id.*  In addition, the Second
Circuit "ha[s] long recognized that the equal protection guarantee also extends to
individuals who allege no specific class membership but are nonetheless subjected to
invidious discrimination at the hands of government officials."  *Harlen Assocs. v. Inc.
Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).

15

Argentieri does not allege membership in a protected class,[4] but he still may pursue "either a 'class of one' or a 'selective enforcement' equal protection claim."  *See Jones v. Cuomo*, 542 F. Supp. 3d 207, 223 (S.D.N.Y. 2021).  "Under either theory, an individual must demonstrate that he was treated differently from other [similarly situated] individuals." *Id.* (citing *Bizzarro v. Miranda*, 394 F.3d 82, 86 (2d Cir. 2005)).

### 1.      Class of One

To prevail on a class of one claim, the plaintiff must show that (1) "no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy," and (2) "the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake."  *Hu*, 927 F.3d at 92 (internal quotation marks and citation omitted). Ultimately, "class of one claims require an extremely high degree of similarity between a plaintiff and a comparator."  *Jones*, 542 F. Supp. 3d at 223 (internal quotation marks and citation omitted).

Here, Argentieri identifies three comparators that allegedly were treated more favorably than his business: (1) "Golden Paws," owned by town agricultural board member Kurek; (2) "Jamco K-9 Training Center," also owned by Kurek; and (3)

---

[4] To the extent Argentieri believes that he is a member of a protected class based on his lack of political connections within the Town of Evans, *see, e.g.*, Docket Item 1 at ¶ 28, that position is untenable, *cf. Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (concluding that jailhouse lawyers and inmate liaison committee members were not protected classes for purposes of a section 1985(3) equal protection conspiracy claim because those classes "plainly d[id] not possess the type of *inherited or immutable characteristics* sufficient to satisfy the class-based animus requirement." (emphasis added)).

"Creature Comforts Pet Resort."  *See* Docket Item 1 at ¶ 25 (cleaned up); Docket Item 19 at 2, ¶ 5.  But Argentieri does not provide any relevant facts about Jamco or Creature Comforts, except that Jamco "has a contract with the Town of Evans to shelter stray animals on behalf of the town."  *See* Docket Item 19 at 2, ¶ 5.  And while he alleges that Golden Paws offers overnight boarding, he also suggests that Golden Paws does not operate on property zoned "General Business."  *See* Docket Item 1 at ¶¶ 20, 38.

Argentieri does not plausibly allege the "extremely high degree of similarity" between his business and Jamco, Creature Comforts, or Golden Paws necessary to sustain a class of one claim.  *See Hu*, 927 F.3d at 93 (internal quotation marks and citation omitted).  Indeed, unlike the business Argentieri wishes to operate, those three competitors are not dog day care facilities that offer overnight boarding on properties zoned "General Business."  *See* Docket Item 1 at ¶¶ 20, 38; Docket Item 19 at 2 ¶ 5.  For that reason, Argentieri has failed to state a viable class of one equal protection claim.  *See, e.g.*, *Zito v. Wawayanda*, 571 F. App'x 70, 71-72 (2d Cir. 2014) (summary order) (concluding that the plaintiff had not shown that two properties were sufficiently similar where one was zoned for "Industrial Uses" and the other was zoned for "Light Manufacturing Uses").

## 2.    Selective Enforcement

To prevail on a selective enforcement claim, "a plaintiff must [show] that (1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise

of constitutional rights, or by a malicious or bad faith intent to injure the person." *Hu*, 927 F.3d at 91 (internal quotation marks and citation omitted).

Argentieri alleges that Local Law No. 7's restrictions do not apply to Jamco, Creature Comforts, or Golden Paws. *See* Docket Item 1 at ¶¶ 27, 30. But Local Law No. 7 on its face applies only to dog day care facilities, *see* Docket Item 15-5 at 2-4, and Argentieri does not allege that the three comparators are dog day care facilities or that Local Law No. 7 should otherwise apply to them. And if the owners of Jamco, Creature Comforts, or Golden Paws open a dog day care facility like Argentieri's on a property zoned "Agriculture & Open Space," "Rural Agriculture," or "General Business," Local Law No. 7 will indeed restrict their rights to operate. *See id.* So Argentieri has not alleged that the individual defendants selectively enforced Local Law No. 7 against him. *See, e.g.*, *Casciani v. Nesbitt*, 659 F. Supp. 2d 427, 449 (W.D.N.Y. 2009) ("Indeed, the Second Circuit has stated that 'a showing that the plaintiff was treated differently compared to others similarly situated' is a 'prerequisite' and a 'threshold matter' to a selective enforcement claim." (quoting *Church of the Am. Knights of the Ku Klux Klan v. Kerik*, 356 F.3d 197, 210 (2d Cir. 2004))).

Moreover, regardless of Argentieri's ability to point to others similarly situated, he has not pleaded facts sufficient for a reasonable juror to conclude that the defendants enacted Local Law No. 7 for a discriminatory purpose. *See Hu*, 927 F.3d at 91 ("A plaintiff cannot merely rest on a demonstration of different treatment[;] . . . he must prove that the disparate treatment was *caused by* the impermissible motivation." (emphasis in original) (internal quotation marks and citations omitted)). The only allegation of personal malice or ill will found in the complaint is that "Macko . . . used her

[councilmember position] on the town board, on numerous occasions, to verbally disparage [Argentieri's] building and its location before the public." *See* Docket Item 1 at ¶ 40.  But that fact does not plausibly establish impermissible malice on the part of Macko or any other individual defendant.  *See Harlen Assocs.*, 273 F.3d at 503 ("Enmity directed toward a business property use may not form the basis of a constitutional claim because equal protection rights vest in individuals rather than business activities." (citing *Shelley v. Kraemer*, 334 U.S. 1, 22 (1948))); *Marom v. Town of Greenburgh*, Case No. 18 Civ. 7637 (JCM), 2020 WL 978514, at *9 (S.D.N.Y. Feb. 28, 2020) (collecting cases).

Argentieri also cannot rely on the fact that, by virtue of her position on the town agricultural board, Kurek had personal relationships with the other individual defendants.  That fact might support a claim that Kurek and the other individual defendants wanted to help each other, but not that they intended to hurt Argentieri. *See, e.g.*, *Hi Pockets, Inc. v. Music Conservatory of Westchester, Inc.*, 192 F. Supp. 2d 143, 158 (S.D.N.Y. 2002) ("HPI does make conclusory claims of political corruption in the granting of the Conservatory's building permit.  However, none of these allegations creates a claim that the White Plains defendants intended *to injure HPI*; they merely allege that the White Plains defendants intended to aid the Conservatory or other politicians." (emphasis in original) (internal citations omitted)).  Nor can he rely on the fact that Local Law No. 7 either did not apply to—or was not enforced against—Jamco, Creature Comforts, or Golden Paws because "a demonstration of different treatment from persons similarly situated, without more, [does] not establish malice or bad faith." *See Crowley v. Courville*, 76 F.3d 47, 53 (2d Cir. 1996); *see also LeClair v. Saunders*,

627 F.2d 606, 608 (2d Cir. 1980) ("Mere failure to prosecute other offenders is not a basis for a finding of denial of equal protection.").  Accordingly, Argentieri fails to state a selective enforcement equal protection claim.

###    C.    Dormant Commerce Clause

"The Constitution grants Congress the power '[t]o regulate Commerce . . . among the several States.'"  *Westchester Day Sch. v. Village of Mamaroneck*, 504 F.3d 338, 354 (2d Cir. 2007) (alteration and ellipsis in original) (quoting U.S. Const. art. I, § 8, cl. 3).  "Th[at] express grant of power to Congress contains 'a further, negative command, known as the dormant Commerce Clause,' which limits the power of local governments to enact laws affecting interstate commerce."  *Town of Southold v. Town of East Hampton*, 477 F.3d 38, 47 (2d Cir. 2007) (internal citation omitted) (quoting *Okla. Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 179 (1995)).

"In analyzing a challenged local law under the dormant Commerce Clause, [courts] first determine whether [the law] clearly discriminates against interstate commerce in favor of intrastate commerce, or whether it regulates evenhandedly with only incidental effects on interstate commerce."  *Id.*  "The term discrimination in this context 'means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter.'"  *Id.* (quoting *Or. Waste Sys., Inc. v. Dep't of Env't Quality*, 511 U.S. 93, 99 (1994)).

If a local law discriminates against interstate commerce, "[courts] then apply the appropriate level of scrutiny."  *Id.*  "A state statute may violate the dormant Commerce Clause in three ways:

> First, a statute that clearly discriminates against interstate commerce in favor of intrastate commerce is virtually invalid per se and can survive only

20

if the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism.   Second, if the statute does not discriminate against interstate commerce, it will nevertheless be invalidated . . . if it imposes a burden on interstate commerce incommensurate with the local benefits secured.   Third, a statute will be invalid per se if it has the practical effect of extraterritorial control of commerce occurring entirely outside the boundaries of the state in question."

*Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 168 (2d Cir. 2005) (italics omitted) (quoting *Freedom Holdings, Inc. v. Spitzer*, 375 F.3d 205, 216 (2d Cir. 2004)).

Here, Local Law No. 7 does not facially discriminate against interstate commerce.   *See* Docket Item 15-5 at 2-4.   Moreover, Argentieri does not plead any facts suggesting that Local Law No. 7 indirectly burdens interstate commerce.   *See, e.g.*, *Salvador v. Adirondack Park Agency*, 35 F. App'x 7, 14 (2d Cir. 2002) (summary order) ("Because the plaintiffs allege nothing that could constitute interstate discrimination or protectionism, their Commerce Clause claim lacks merit."); *see also N.Y. State Nat. Gas Corp. v. Town of Elma*, 182 F. Supp. 1, 6 (W.D.N.Y. 1960) (acknowledging that "the Commerce Clause of the Constitution [does not] operate to exempt interstate commerce from reasonable local zoning regulation.").   So while his complaint, read broadly, may raise issues involving interstate commerce, Argentieri has not raised a viable dormant Commerce Clause claim.[5]

---

[5] Because Argentieri has not plausibly alleged a deprivation of his rights under either the Fourteenth Amendment or the dormant Commerce Clause, his remaining municipal liability, official capacity, and conspiracy claims necessarily fail. *See Goe v. Zucker*, 43 F.4th 19, 34 (2d Cir. 2022); *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995); *see also Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) ("A claim asserted against an individual in his official capacity . . . is in effect a claim against the governmental entity itself . . . .").

III.    **LEGISLATIVE IMMUNITY**

The defendants argue that Argentieri's section 1983 claims against the individual defendants—Hosler, Smith, Macko, Schraft, Hill, and Kurek—should be dismissed on legislative immunity grounds as well.  *See* Docket Item 15-17 at 14-17.  This Court agrees.

"[U]nder the common law, state and local government officials . . . enjoy absolute immunity against federal civil claims asserted against them in their individual capacities" for "conduct that falls 'within the sphere of legitimate legislative activity.'"  *NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177, 190 (2d Cir. 2019) (quoting *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 503 (1975)).  And "[u]nder the Supreme Court's functional test for determining the applicability of absolute legislative immunity, 'whether immunity attaches turns not on the official's identity, *or even on the official's motive or intent,* but on the nature of the act in question.'"  *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 82 (2d Cir. 2007) (emphasis added) (quoting *Almonte v. City of Long Beach*, 478 F.3d 100, 106 (2d Cir. 2007)).  "Thus, 'officials outside the legislative branch' may be entitled to legislative immunity when 'they perform legislative functions.'"  *NRP Holdings LLC*, 916 F.3d at 191 (quoting *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998)).

The Second Circuit "has defined a two-part inquiry for determining whether an act is legislative:

> First, it is relevant whether the defendants' actions were legislative in *form*, i.e., whether they were integral steps in the legislative process.  Second, it may also be relevant whether the defendants' actions were legislative in *substance*, i.e., whether the actions bore all the hallmarks of traditional legislation, including whether they reflect discretionary, policymaking

decisions implicating the budgetary priorities of the government and the services the government provides to its constituents."

*Id.* at 191-92 (emphases in original) (italics omitted) (quoting *Rowland*, 494 F.3d at 89). Stated differently, legislative immunity applies to actions that are "both: (1) substantively legislative, i.e., acts that involve policy making; and (2) procedurally legislative, i.e., passed by means of established legislative procedures."  *Rowland*, 494 F.3d at 89-90 (italics, internal quotation marks, and citation omitted).

As determined above, Local Law No. 7 is a legislative act.  *See* Section II.A, *supra*.  So the issue of legislative immunity here turns on whether, "when committing the alleged violations, [the individual] defendants were acting in their legislative capacities." *See Rowland*, 494 F.3d at 76 (internal quotation marks and citation omitted).

Hosler, Macko, and Schraft—elected members of the town board—clearly acted in their legislative capacities when they participated in the public hearing on July 17, 2019, and when they voted to pass Local Law No. 7.  *See Orange Lake Assocs., Inc. v. Kirkpatrick*, 21 F.3d 1214, 1224 (2d Cir. 1994) (concluding that members of local town board were entitled to legislative immunity for claims based on board's adoption of master zoning plan and certain zoning law amendments); *Highview Props. D.H.F. Inc. v. Town of Monroe*, 606 F. Supp. 3d 5, 27 (S.D.N.Y. 2022) ("Here, because enactment of the moratorium . . . and the zoning amendments were purely legislative acts, [the members of the town board sued in their individual capacities] are absolutely immune from suit." (also collecting cases)).  Smith, as the town director of planning and development, similarly acted in a legislative capacity when he drafted the substantive provisions of Local Law No. 7.  *See Almonte*, 478 F.3d at 106.  So the claims against those defendants are barred by legislative immunity.

Argentieri takes particular issue with the participation of Hill and Kurek, two members of the town agricultural board, in the development of Local Law No. 7.  *See* Docket Item 1 at ¶ 31 ("Obviously, there was absolutely no legitimate reason that the [town] [a]gricultural [b]oard should have been involved in any manner in the creation of the new law, especially when that law had absolutely nothing to do with [f]arming and/or livestock . . . .").  He alleges that Hill gave false testimony that misled the town board into voting in favor of Local Law No. 7.  *See id.* at ¶ 42.  And he alleges that "Kurek was actually the person in charge of writing [Local Law No. 7]."  *Id.* at ¶ 24.

But as members of the town agricultural board, Hill and Kurek had an obligation to review any proposed law that might affect "a Town [of Evans] agricultural zoning district" and to make proposed recommendations about that law to the town board.  *See* Town of Evans, N.Y., Code § 200-8.4(C); *see also* Docket Item 15-17 at 16-17.  And Local Law No. 7 affected the rights and privileges of individuals owning or leasing properties zoned "Agriculture & Open Space" and "Rural Agriculture."  *See* Docket Item 15-5 at 3.  So Hill and Kurek, whether by providing testimony to the town board or by helping Smith with drafting responsibilities, acted in legislative capacities.  *See, e.g.*, *Gordon v. Katz*, 934 F. Supp. 79, 84 (S.D.N.Y. 1995) (concluding that a town justice and a town supervisor were entitled to legislative immunity for preparing a tentative budget and presenting that budget to the town board).

In sum, the defendants' enactment of Local Law No. 7 was legislative in both form and substance.  For that reason, Hosler, Smith, Macko, Schraft, Hill, and Kurek are entitled to legislative immunity, and Argentieri's section 1983 claims against them must be dismissed for that reason as well.

24

## IV.   ANTITRUST CLAIMS

Section 1 of the Sherman Act "declares illegal '[e]very contract, combination . . . , or conspiracy, in restraint of free trade.'"  *Drabinsky v. Actors' Equity Ass'n*, 106 F.4th 206, 212 (2d Cir. 2024) (alteration and ellipsis in original) (quoting 15 U.S.C. § 1). Section 2 "penalizes those who 'monopolize, or attempt to monopolize, or combine or conspire . . . to monopolize any part of . . . trade.'"  *Id.* (ellipses in original) (quoting 15 U.S.C. § 2).

But the Sherman Act does not "provide a private right of action."  *In re Publ'n Paper Antitrust Litig.*, 690 F.3d 51, 62 (2d Cir. 2012).  "That right is established by section 4 of the Clayton Act, which authorizes private suits by 'any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws.'" *Id.* (quoting 15 U.S.C. § 15).  So "[d]espite the utilization of different verbiage in the two [a]cts, the standards of liability under the Clayton Act largely mirror those under the Sherman Act."  *Yankees Ent. & Sports Network, LLC v. Cablevision Sys. Corp.*, 224 F. Supp. 2d 657, 666-67 (S.D.N.Y. 2002).

Here, in response to the defendants' motion to dismiss, Argentieri asserts that Local Law No. 7 violates the Sherman Act, the Clayton Act, and New York's Donnelly Act.[6]  *See* Docket Item 19 at 2, ¶ 7.  Argentieri does not cite specific provisions of those acts, but he alleges that the defendants engaged in price fixing and conspired to

---

[6] "A pro se plaintiff may not raise entirely new causes of action for the first time in his opposition papers, but the Court may consider new claims appearing for the first time in briefing if the claims could have been asserted based on the facts alleged in the complaint."  *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (italics, internal quotation marks, and citation omitted).  Argentieri does not allege new facts in his response that necessarily support his antitrust claims, so the Court will consider those claims here.

maintain an illegal dog day care monopoly or oligopoly within the Town of Evans.  *See*

Docket Item 1 at ¶¶ 25-27, 30; Docket Item 19 at 1, ¶ 4.  The Court therefore

understands Argentieri to assert, through section 4 of the Clayton Act, claims under

section 1 and section 2 of the Sherman Act and the corresponding provisions of the

Donnelly Act.[7]  Those claims are barred, however, by the state action immunity doctrine

articulated by the Supreme Court in *Parker v. Brown*, 317 U.S. 341 (1943).

"[T]he Sherman Act [does] not apply to anticompetitive restraints imposed by the

States 'as an act of government.'"  *City of Columbia v. Omni Outdoor Adver., Inc.*

("*Omni Outdoor*"), 499 U.S. 365, 370 (1991) (quoting *Parker*, 317 U.S. at 352).  "Local

governments are not sovereign, and so their actions are not automatically immune

under *Parker*."  *Elec. Inspectors, Inc. v. Village of East Hills*, 320 F.3d 110, 118 (2d Cir.

2003).  "Nonetheless, because states sometimes effect regulatory regimes through local

government bodies, municipalities may avail themselves of *Parker* immunity to the

extent their actions are 'an authorized implementation of state policy.'"  *Id.* (quoting

*Omni Outdoor*, 499 U.S. at 370).

Accordingly, a municipality "is entitled to state action immunity only when it acts

pursuant to a 'clearly articulated and affirmatively expressed' state policy that authorizes

its actions."  *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 476 (2d Cir.

2009) (quoting *City of Lafayette v. La. Power & Light Co.*, 435 U.S. 389, 410 (1978)).

---

[7] "New York's Donnelly Act . . . is modeled after the Sherman Act and should generally be construed in light of [f]ederal precedent."  *Biocad JSC v. F. Hoffmann-La Roche*, 942 F.3d 88, 101 (2d Cir. 2019) (internal quotation marks and citation omitted). As such, the Court's analysis of Argentieri's Sherman Act claims applies equally to his Donnelly Act claims.  *See, e.g.*, *Kramer v. Pollock-Krasner Found.*, 890 F. Supp. 250, 254 (S.D.N.Y. 1995).

"Th[at] requisite showing of authority has two components: first, the subject must have authority to regulate; second, it must have authority to suppress competition." *Id.* (internal quotation marks and citation omitted).  Ultimately, "[s]o long as the subdivision's anticompetitive activities are a 'foreseeable consequence' of the state delegation, the 'clear articulation' standard has been met." *Id.* (quoting *Cine 42nd St. Theater Corp. v. Nederlander Org., Inc.*, 790 F.2d 1032, 1043 (2d Cir. 1986)).

Here, the Town of Evans had the authority to enact Local Law No. 7 under its police and zoning powers.  *See Kirkpatrick*, 21 F.3d at 1221-24; *Kamhi v. Town of Yorktown*, 547 N.E.2d 346, 74 N.Y.2d 423, 433 (1989).  And the inclusion of operating restrictions for dog day care facilities was a foreseeable anticompetitive consequence of the Town of Evans's decision to exercise that authority.  *See City of Albany v. Lee*, 428 N.Y.S.2d 758, 76 A.D.2d 978, 978-79 (3d Dep't 1980) ("Animal hospitals, kennels[,] and pounds are organized businesses[,] . . . [and] it would be a valid exercise of the zoning power to exclude all such activity from residential areas."); *Town of Huntington v. Sudano*, 346 N.Y.S.2d 582, 42 A.D.2d 791, 792 (2d Dep't 1973) ("The regulation of a kennel traditionally has been effectuated by a zoning ordinance; and the regulation may include the limitation on the number of and age of dogs permitted.").

For those reasons, Argentieri may not pursue antitrust claims against the Town of Evans or any of the individual defendants based on the enactment of Local Law No. 7.  *See Freedom Holdings, Inc. v. Cuomo*, 624 F.3d 38, 50 (2d Cir. 2010) (acknowledging that state statutes mandating or authorizing antitrust violations are inactionable by virtue of the state action immunity doctrine "if the anti-competitive conduct at issue is both 'clearly articulated and affirmatively expressed as state policy'

and 'actively supervised by the State itself.'" (quoting *Cal. Retail Liquor Dealers Ass'n v.*

*Midcal Aluminum, Inc.*, 445 U.S. 97, 105 (1980))).  And because that is the only theory

of antitrust liability he raises, *see* Docket Item 19 at 1-2, ¶¶ 4-8, Argentieri's antitrust

claims therefore must be dismissed.

## V.   LEAVE TO AMEND

The Court next considers whether it sua sponte should grant Argentieri leave to

amend his complaint.  *See, e.g.*, *Brown v. Rotenberg*, 268 F. Supp. 3d 445, 451

(W.D.N.Y. 2017).  The Court declines to do so, however, on grounds of futility.

A pro se complaint "should not be dismissed without granting leave to amend at

least once when a liberal reading of the complaint gives any indication that a valid claim

might be stated."  *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)

(alterations, internal quotation marks, and citation omitted).  "Where it appears that

granting leave to amend is unlikely to be productive, however, it is not an abuse of

discretion to deny leave to amend."  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131

(2d Cir. 1993); *see Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem

with Cuoco's causes of action is substantive; better pleading will not cure it.  Repleading

would thus be futile.").

Here, granting Argentieri leave to amend his complaint would be futile because:

(1) the individual defendants are entitled to legislative immunity against his section 1983

claims; (2) the Town of Evans itself cannot be held liable under section 1983 if the

individual defendants are entitled to absolute legislative immunity; and (3) all of the

defendants are immune from antitrust liability under the *Parker* state action doctrine.

*See, e.g.*, *Argentieri v. Clerk of Court for Judge Kmiotek*, 420 F. Supp. 2d 162, 165

(W.D.N.Y. 2006) (denying the plaintiff's request for leave to amend on grounds of futility where the defendants were entitled to absolute judicial immunity).  As such, the Court will not grant sua sponte Argentieri leave to amend his complaint.

## VI.   SECTION 1988 FEES

Finally, the Court addresses the defendants' request for attorneys' fees pursuant to 42 U.S.C. § 1988.  *See* Docket Item 15-17 at 32.  That request is denied.

"The Court may award the prevailing party in a [section] 1983 action a reasonable attorneys' fee."  *Ortiz v. Stambach*, 657 F. Supp. 3d 243, 262 (W.D.N.Y. 2023) (citing *Lilly v. City of New York*, 934 F.3d 222, 227 (2d Cir. 2019)).  "Awards to prevailing defendants, . . . 'protect defendants from burdensome litigation having no legal or factual basis.'"  *Belton v. Borg & Ide Imaging, P.C.*, 585 F. Supp. 3d 323, 328 (W.D.N.Y. 2022) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 420 (1978)).  "Such awards, however, are very rare, and courts must be extremely cautious in awarding attorneys' fees to prevailing defendants to avoid chilling the vital ability of persons who believe that they are victims of discrimination to seek recourse."  *Id.* (alteration, internal quotation marks, and citations omitted).  Attorneys' fees under section 1988 therefore "should be awarded to prevailing defendants only when the plaintiff's 'claim was frivolous, unreasonable, or groundless, or . . . the plaintiff continued to litigate after it clearly became so.'"  *Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) (emphasis omitted) (quoting *Christiansburg Garment Co.*, 434 U.S. at 422).

In this case, although the defendants certainly are prevailing parties, they do not provide any explanation why this case is one of those "very rare" cases warranting the

award of attorneys' fees.  *See, e.g.*, *Belton*, 585 F. Supp. 3d at 329-30 ("Assuming arguendo that the dismissal of these claims [under Rule 12(b)(6)] was with prejudice and foreclosed [the plaintiff's] ability to replead in this Court, that type of dismissal does not necessarily entitle [the] defendants to an award of attorneys' fees as the prevailing parties." (italics omitted) (also collecting cases)).  For that reason, the defendants' request for attorneys' fees under section 1988 is denied.

## CONCLUSION

For the reasons stated above, the defendants' motion to dismiss, Docket Item 15, is GRANTED, and Argentieri's motion for a ruling, Docket Item 23, is DENIED as moot. The Clerk of the Court shall close this case.

SO ORDERED.

Dated:   October 8, 2024
Buffalo, New York


   */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE